FILED

2026 Jun-22  PM 01:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| OCIE LEE LYNCH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No.:  1:25-cv-00567-HDM-JHE |
| | ) | |
| PHYLLIS MORGAN, et al., | ) | |
| | ) | |
| Respondent. | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Ocie Lee Lynch ("Mr. Lynch" or "Petitioner"), a person in custody under a judgment of a court of Alabama, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1).  The petition was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b) for preliminary review.  Upon consideration, the undersigned finds the petition is due to be dismissed because it is barred by the applicable statute of limitations.

**I. Procedural History**

**A. Conviction and Direct Appeal**

In November 2014, Mr. Lynch was convicted in the Circuit Court of Talladega County, Alabama, of six counts of capital murder for the murder of Robert Blake Lazenby and sentenced to life without the possibility of parole.  (Doc. 18 at 1–2; doc. 18-4 at 2).  Mr. Lynch appealed his conviction to the Alabama Court of Criminal Appeals ("ACCA"), arguing that his motion for a mistrial should have been granted and that the evidence supporting his convictions was insufficient.  (Doc. 18 at 2; doc. 18-1 at 7–20).  The ACCA rejected both claims on the merits in a published opinion on March 18, 2016.  (Doc. 18 at 2; doc. 18-1).  However, it concluded that (although Mr. Lynch had not raised the issue) some of the multiple capital murder convictions constituted alternative means of committing the same crime.  (Doc. 18-1 at 21–23).  Accordingly,

it found that three of the six convictions violated Mr. Lynch's right to be free from double jeopardy and were thus due to be dismissed.  (*Id.*).  It remanded the matter to the Circuit Court of Talladega County for resentencing based on the remaining three counts.  (*Id.*).

On remand, the trial court resentenced Mr. Lynch on April 15, 2016.  *See State of Alabama v. Ocie Lee Lynch*, Case No. 61-CC-2012-000262.00 ("*Lynch I*"), Doc. 164.[1]  On return to remand, the ACCA affirmed the remaining convictions by unpublished memorandum on May 27, 2016. (Doc. 18-3; 18-4 at 2).  Mr. Lynch did not petition the ACCA for rehearing or petition the Alabama Supreme Court for a writ of certiorari,[2] and the ACCA issued a certificate of judgment on June 15, 2016.  (Doc. 18 at 2; doc. 18-3; doc. 18-4 at 2).

### B. Rule 32 Proceedings

On April 10, 2020, Mr. Lynch filed a lengthy Rule 32 petition in the Circuit Court of Talladega County.  *See State of Alabama v. Ocie Lee Lynch*, Case No. 61-CC-2012-000262.60 ("*Lynch II*"), Docs. 1, 2 & 3.  In that petition, Mr. Lynch raised a number of claims, including ineffective assistance of trial counsel, defects in the indictment, failure by the State to disclose evidence favorable to him, unconstitutional selection and empanelment of the grand and petit

---

[1] Federal Rule of Evidence 201(b)(2) permits a court to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  The Eleventh Circuit has recently held that a district court considering a habeas petition may properly take judicial notice of an online state court docket under that Rule.  *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651 (11th Cir. 2020).  Therefore, the undersigned takes judicial notice of the records of Mr. Lynch's criminal trial case and Rule 32 proceedings as found on Alacourt.  Consistent with the Eleventh Circuit's guidance on best practices when judicially noticing facts under these circumstances, *see id.* at 652–53, copies of cited documents and of the Alacourt consolidated case action summaries of each proceeding are attached as exhibits to this report and recommendation.

[2] In a criminal case, a petition for rehearing in the ACCA is a prerequisite for certiorari review by the Alabama Supreme Court.  ALA. R. APP. P. 40(d)(1).

2

juries, that he was convicted based on evidence obtained during an unlawful arrest, jurisdictional defects, and newly discovered material facts entitling him to a new trial. (Doc. 18-4 at 2–3).

Mr. Lynch also asserted that he was entitled to equitable tolling of the one-year Rule 32.2(c) statute of limitations because he was prevented from filing the petition in a timely manner due to lost legal documents during a transfer to another prison in May 2016 and a lockdown at Donaldson Correctional Facility lasting until November 2017. (Doc. 18-4 at 3–4). Mr. Lynch argued that despite his efforts to obtain records from his trial counsel, he did not receive them until May 31, 2019, after Mr. Lynch filed a bar complaint; the records Mr. Lynch received did not contain the trial transcript or other court documents. (*Id.* at 3). The circuit court appointed counsel to represent Mr. Lynch. (*Id.* at 4). It then held an evidentiary hearing on January 30, 2023, at which Mr. Lynch presented testimony from one of his trial attorneys and introduced documentary evidence in support of his equitable tolling claim. (*Id.*).

The circuit court ultimately denied Mr. Lynch's petition on August 2, 2023. (Doc. 1 at 4–6; doc. 18-4 at 4–5). It determined that, among other things, Mr. Lynch had failed to demonstrate that he was entitled to equitable tolling and thus that his petition was time-barred by Rule 32.2(c). (Doc. 1 at 4–5). Alternatively, the court found that the only three claims Mr. Lynch had pursued at the hearing—ineffectiveness of trial counsel for failing to raise a *Batson*[3] challenge, for failing to file a motion to change venue, and for failing to object to jury instructions—were meritless. (*Id.* at 6).

---

[3] *Batson v. Kentucky*, 476 U.S. 79 (1986), forbids racially discriminatory peremptory strikes in jury selection.

On appeal to the ACCA, Mr. Lynch again raised an equitable tolling argument, arguing in the alternative that his petition was timely filed under Rule 32.2(d). (Doc. 18-4 at 5–6). The ACCA rejected both arguments in an April 26, 2024 memorandum opinion. (Doc. 18-4). As to the equitable tolling argument, the ACCA first observed that Mr. Lynch's equitable tolling on appeal was "substantially different" from the equitable tolling argument he presented in the circuit court. (*Id.* at 12). As to Mr. Lynch's claims that he did not have a copy of the trial transcript, the ACCA noted that Mr. Lynch had acknowledged that he had a copy of the trial transcript in 2016. (*Id.* at 12). It rejected Mr. Lynch's arguments concerning his trial counsel's failure to produce the file until 2019, noting that Mr. Lynch had not supported his claims with any evidence. (*Id.* at 15–16). The ACCA also found that Mr. Lynch had failed to support his diligence in attempting to obtain court records. The ACCA noted that Mr. Lynch did not testify on his own behalf at the evidentiary hearing and, despite claims that he had attempted to obtain records from the circuit clerk of court since June 2016, Mr. Lynch had entered into evidence only three letters to the circuit clerk's office dated October 18, 2019, and later. (*Id.* at 9–11, 16–17). Because the ACCA found that Mr. Lynch's petition was time-barred, it did not reach the merits of his arguments. (*Id.* at 18).

Mr. Lynch petitioned the ACCA for rehearing, but it overruled his application. *Lynch II*, Doc. 101. Mr. Lynch then petitioned the Alabama Supreme Court for a writ of certiorari (doc. 18-5), but it denied the writ with no opinion and issued a certificate of judgment on September 13, 2024. (doc. 18-6).

### C. Federal Habeas Petition

Mr. Lynch filed this federal habeas petition on April 2, 2025. (Doc. 1). In it, he raises the following grounds: (1) ineffective assistance of trial counsel due to counsel's failure to file a motion for change of venue (*id.* at 13–16); (2) ineffective assistance of trial counsel due to trial

counsel's failure to file a *Batson* challenge (*id.* at 16–18); (3) ineffective assistance of trial counsel due to failure to object to an illegal arrest (*id.* at 18–20); (4) ineffective assistance of trial counsel due to trial counsel's failure to object to erroneous jury instructions (*id.* at 108–12); and (5) the trial court lacked jurisdiction to render judgment or impose the sentence (*id.* at 113–16).[4] Mr. Lynch also argues that newly discovered evidence—a bloody shoe impression of which he was unaware due to trial counsel's ineffective assistance—supports a new trial. (*Id.* at 183–87, 203–06).

On October 23, 2025, the undersigned entered an order requiring the respondents to show cause why the petition should not be granted.[5] (Doc. 16). In response to the show cause order, the respondents filed an answer in which they assert the petition is due to be summarily dismissed because it is barred by the one-year statute of limitations enacted by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). (Doc. 18). The undersigned informed Mr. Lynch that the petition would be deemed ripe for summary disposition and directed him to file a reply addressing the answer. (Doc. 19). Mr. Lynch filed a reply on December 22, 2025, arguing

---

[4] Mr. Lynch has also filed a memorandum asserting that he did not receive a copy of the memorandum accompanying his petition and arguably contending that it may not have been filed. (Doc. 9). The court sent Mr. Lynch a copy of his petition, and he has not raised this argument afterwards. In addition, Mr. Lynch has filed another memorandum containing merits claims largely already reflected in his petition. (Doc. 12)

[5] The undersigned denied Mr. Lynch's motion to proceed *in forma pauperis* on April 28, 2025, and ordered Mr. Lynch to pay the $5.00 habeas filing fee. (Doc. 4). The approximately six months that elapsed between that order and the entry of the order to show cause were spent resolving the filing fee issue. The court ultimately received the filing fee on October 14, 2025. (Docket text between docs. 14 & 15).

(among other things) that he is entitled to equitable tolling of the statute of limitations.[6] (Doc. 21).

The petition is fully briefed and ripe for review.

## II. Analysis

The respondents argue that Mr. Lynch's petition is barred by the AEDPA statute of limitations. The undersigned agrees.

AEDPA amended 28 U.S.C. § 2244 to read in part, as follows:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[6] Mr. Lynch also argues that the respondents failed to include all relevant documents in their answer and thus that they were in violation of Rule 5(d)(1) of the Rules Governing Section 2254 Proceedings. (Doc. 21 at 1–2). That Rule requires the respondents to submit with their answer "any brief that the petitioner submitted in an appellate court contesting the conviction or sentence, or contesting an adverse judgment or order in a post-conviction proceeding." Rule 5(d)(1), Rules Governing Section 2254 Cases and Section 2255 Proceedings. Specifically, Mr. Lynch contends that the respondents have failed to include his brief on direct appeal, his application for rehearing in his Rule 32 proceeding, and his reply brief in the Rule 32 proceeding. (*Id.*). Mr. Lynch contends that this failure places the respondents in default and that they should be barred from asserting defenses to his petition. (*Id.* at 2). Even if this represents a violation of Rule 5(d)(1), the respondents' failure to include these documents is harmless. As discussed below, the statute of limitations fully resolves this petition. Furthermore, a default judgment is not a remedy available in a 2254 proceeding. *Aziz v. Leferve*, 830 F.2d 184, 187 (11th Cir. 1987).

> (D) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1).

Mr. Lynch's conviction became final on June 13, 2016, when the fourteen-day period for filing a petition for rehearing with the Alabama Court of Criminal Appeals lapsed. *See* ALA. R. APP. P. 40. Accordingly, he had until June 13, 2017, to file a petition with this Court. He did not. The period for filing lapsed at that time absent some exception to the general rule.

There are, generally speaking, three such exceptions: statutory tolling, equitable tolling, and actual innocence. Each is discussed below.

**A. Statutory Tolling**

Statutory tolling arises from 28 U.S.C. § 2244(d)(2). Under that section, the one-year limitations period is tolled during the pendency of "a properly filed application for State post-conviction or other collateral review" of the underlying judgment. *McCloud v. Hooks*, 560 F.3d 1223, 1227 (11th Cir. 2009).

Mr. Lynch did not file a post-conviction petition until April 10, 2020. At the time Mr. Lynch filed his Rule 32 petition, however, the one-year limitations period had long expired. Thus, he is not entitled to any of the benefits of this section because by the time he filed his Rule 32 petition, there was no running limitations period to toll. *See Tinker v. v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001) ("a state court petition . . . that is filed following the expiration of the federal limitations period 'cannot toll that period because there is no period remaining to be tolled'"), *cert. denied*, 534 U.S. 1144 (2002).

**B. Equitable Tolling**

The AEDPA limitation may be equitably tolled, but a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks and citation omitted). Equitable tolling is typically applied sparingly, *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000), and is available "only in truly extraordinary circumstances." *Johnson v. United States*, 340 F.3d 1219, 1226 (11th Cir. 2003). The petitioner bears the burden of proving his entitlement to equitable tolling, *San Martin v. McNeil*, 633 F.3d 1257, 1268 (11th Cir. 2011), and will not prevail based upon a showing of either extraordinary circumstances or diligence alone; the petitioner must establish both. *See Diaz v. Sec'y for Dep't of Corr.*, 362 F.3d 698, 702 (11th Cir. 2004).

In his traverse, Mr. Lynch contends that "the petitioner's court appointed appeal's counsel has established a prima facie case of how the petitioner is entitled to equitable tolling." (Doc. 21 at 3). The undersigned assumes from this that Mr. Lynch is relying on his Rule 32 appeal arguments to support equitable tolling here. Mr. Lynch's equitable tolling arguments fail here for substantially the same reasons they failed at the ACCA. As for Mr. Lynch's diligence, the earliest document Mr. Lynch has included here in which he requested records is a January 20, 2015, note in which Mr. Lynch states that he was "going about trying to get my court transcripts" for appeal. (Doc. 1 at 106). There is a sizable gap between this note and the next time the evidence reflects that Mr. Lynch sought records, which was in connection with Mr. Lynch's bar complaint concerning his trial counsel. Mr. Lynch has not included a copy of the bar complaint or stated when it was filed; rather, he has enclosed a copy of a letter from an Assistant General Counsel for the Alabama State Bar to Mr. Lynch's trial counsel dated May 24, 2019, directing trial counsel to

8

provide Mr. Lynch with "a copy of [Mr. Lynch's] trial court transcript, brief, and/or other documents in the client's file." (*Id.* at 148). Even considering Mr. Lynch's argument that his records were lost in 2016 and that he was on lockdown at Donaldson Correctional Facility until November 2017, an unexplained year and a half passed between these events and the date of this letter. There is no *evidence* to support that Mr. Lynch did *anything* between those two dates to obtain the records necessary to file a habeas (or Rule 32) petition. Although Mr. Lynch has annotated the May 24, 2019, letter with the assertion that Mr. Lynch "tried 2 attempts myself just to get my court files & record from [the trial attorney]" (*id.*), as in his Rule 32 appeal Mr. Lynch has presented no evidence here "indicating that he had contacted trial counsel 'on multiple occasions'" prior to filing the complaint. (Doc. 18-4 at 11). And, as in his Rule 32 proceeding, Mr. Lynch provides only letters from October 18, 2019, and later to support that he attempted to obtain records from the circuit clerk. (Doc. 1 at 82–83; doc. 18-4 at 10–11). Thus, nothing indicates that Mr. Lynch was diligent in pursuing his Rule 32 or habeas remedies.

In addition to the absence of anything in the record to show Mr. Lynch's diligence, no evidence supports that an impediment stood in Mr. Lynch's way that would have prevented him from filing a timely habeas petition. In his Rule 32 appeal, Mr. Lynch argued that his trial counsel's failure to provide the file was so egregious that it constituted an impediment to filing the petition. Mr. Lynch also argued that his trial counsel's failure to file a motion to change venue was itself an extraordinary circumstance that prevented Mr. Lynch from filing his Rule 32 petition; as described in Mr. Lynch's petition for a writ of certiorari, this is less about the failure itself serving as an impediment and more about the fact that Mr. Lynch could not have raised the issue because he did not know that his trial counsel had not filed the motion. (*See* doc. 18-4 at 13–15; doc. 18-5 at 14–18). Both of these are essentially the same claim: Mr. Lynch lacked access to the

9

records because his trial counsel would not provide them. Where attorney inaction is asserted as a basis for equitable tolling, courts focus on "the petitioner's *own actions* in the face of his attorney's inaction" when applying the reasonable diligence standard. *See George v. Sec'y Dept. of Corr.*, 438 F. App'x. 751, 753 (11th Cir. 2011) (citing *Holland*, 560 U.S. at 653) (emphasis added). The ACCA pointed out that Mr. Lynch "could have easily contacted his appellate counsel to obtain a copy of the record from his direct appeal and learned everything he needed to know to present the claims he raised in his petition, including that a motion for a change of venue was never filed." (Doc. 18-4 at 16). Although Mr. Lynch is no doubt aware that the ACCA's opinion rejected his argument on this basis, the only arguably new information he provides here is that he "wrote his direct appeal counsel to get a copy of his complete trial transcrip[t]s[.]" (Doc. 21 at 3). Mr. Lynch does not say when this happened or provide any evidence to support this claim. Further, the undersigned notes that Mr. Lynch apparently did not make this argument at any point during his Rule 32 proceedings, which is unusual given that "the State pointed out at the [Rule 32 evidentiary] hearing" that Mr. Lynch could have done so. (Doc. 18-4 at 16).

Mr. Lynch has not met his burden to support either that he was diligent in pursuing his rights or that an extraordinary impediment prevented Mr. Lynch from filing his habeas petition. Accordingly, Mr. Lynch is not entitled to equitable tolling.

### C. Actual Innocence

Actual innocence can overcome the AEDPA statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623 (1998). Habeas petitioners asserting actual innocence as a gateway to review defaulted or time-barred claims must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found

petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. "[This] standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (citation omitted). "In the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of [untimely] claims." *Id.* at 537.

Giving Mr. Lynch the benefit of the doubt, his claims concerning the bloody shoe impression are a claim of actual innocence. In addition, Mr. Lynch appears to argue that judicial conflict of interest in his criminal trial (doc. 21 at 4–9) and his *Batson* claims (*id.* at 9–18) demonstrate his actual innocence.[7]

As to the bloody shoe impression, Mr. Lynch states that "a FBI Laboratory Report contained (2) footwear/shoe impressions that was bloody and found by the victim within the victim's house." (Doc. 1 at 185). According to Mr. Lynch, the impression was from "an Athletic Works 'Corey Strap' shoe," a type of shoe he has never owned. (*Id.* at 203–04). Mr. Lynch's theory is that Lazenby's killer would necessarily have had to step into a pool of blood to stab him multiple times; because Mr. Lynch has never owned this type of shoe, he could not have been the one to leave the impression and was thus not the killer. (*Id.* at 204–05). Mr. Lynch argues that he was unaware of this evidence due to ineffective assistance of his trial counsel and that he only

---

[7] Mr. Lynch appears to invoke "cause and prejudice" in discussing his claims of a conflict of interest. (Doc. 21 at 4–7). That standard applies to excuse a petitioner's procedurally defaulted claims, not to revive a claim barred by the statute of limitations. *See Arthur v. Thomas*, 739 F.3d 611, 629–31 (11th Cir. 2014).

discovered it when his trial counsel provided him with a copy of his file following the bar complaint. (*Id.* at 203–04).

The bloody shoe impression does not satisfy the actual innocence standard. First, Mr. Lynch has not provided the FBI report, so the court has only Mr. Lynch's subjective description of it to go on. This is not "reliable" evidence within the meaning of *Schlup.* Second, even if the report were available, the only evidence to support the inference Mr. Lynch wants a jury to derive from it—that the footprint did not belong to Mr. Lynch—appears to be Mr. Lynch's own testimony. Leaving aside that Mr. Lynch would have had to waive his Fifth Amendment rights to place his testimony into evidence at trial, a jury could easily disbelieve Mr. Lynch's claim that he did not own or wear the shoes in question. Third, as set out in the ACCA's memorandum on direct appeal, the evidence against Mr. Lynch included: testimony from an accomplice, Calvin Haynes, that he and Mr. Lynch discussed payment for the crime, that Mr. Lynch confessed to the murder to Haynes, that Haynes and Mr. Lynch had burned the victim's truck, that Mr. Lynch had thrown the murder weapon in a creek and burned his bloody clothes; testimony from a witness who stated that she (and others) rode with Mr. Lynch and Haynes to Lazenby's house and that Mr. Lynch and Haynes were dropped off because they were supposed to kill a man; testimony from Hayne's sister, Cathy McCall, that she heard Mr. Lynch state while watching a news report concerning the murder that "he wanted his $85,000 for having committed the murder," that Mr. Lynch had confessed to the murder to McCall; and a recording of a conversation involving Mr. Lynch and McCall (as well as McCall's uncle) in which Mr. Lynch discussed the murder. (Doc. 18-1 at 3–18). Faced with this evidence, it is not "more likely than not that no reasonable juror would have found [Mr. Lynch] guilty beyond a reasonable doubt," *Schlup*, 513 U.S. at 327, had the bloody shoe impression and Mr. Lynch's explanation been considered by the jury.

Mr. Lynch's *Batson* and conflict-of-interest claims cannot push him through the actual innocence gateway either. First, and most importantly, neither claim is a claim of actual, factual innocence. Mr. Lynch's *Batson* claim is that the prosecution struck six of the nine African American jurors in the venire. (Doc. 21 at 10–11). Although the *Batson* claim does implicate Mr. Lynch's constitutional rights, the composition of the jury has no bearing on Mr. Lynch's guilt or innocence. Rather, it concerns an alleged defect in the proceedings, which would be relevant as a merits claim but is not relevant for actual innocence purposes. *See Bousley*, 523 U.S. at 615; *United States v. Miles*, 546 F. App'x 730, 733 (10th Cir. 2012) ("We must distinguish [legal error] simpliciter from a claim of actual innocence."). As for the conflict-of-interest claim, Mr. Lynch argues that the district court judge who oversaw his preliminary proceedings and appointed his trial counsel had a conflict due to the judge's familial connections to the victim. Again, this does not have anything to do with Mr. Lynch's guilt or innocence. Second, these claims do not rely on any new evidence not presented at trial because they relate to facts that happened either at trial or during pretrial proceedings.[8] Because these claims do not support Mr. Lynch's actual innocence and are not based on new evidence, they cannot excuse Mr. Lynch's untimely petition.

Neither of Mr. Lynch's actual innocence arguments meet the relevant standard. Accordingly, the actual innocence gateway is not available to save Mr. Lynch's petition from the statute of limitations.

---

[8] Mr. Lynch also argues that state appellate courts were biased against him, but he provides no evidence to support this. In any case, this is not the type of claim that could have been considered at trial because it necessarily occurred in Mr. Lynch's post-trial appellate proceedings.

### III. Conclusion

Based on the foregoing, the undersigned **RECOMMENDS** that the respondents' motion for summary dismissal be **GRANTED**, and the petition for a writ of habeas corpus be **DISMISSED WITH PREJUDICE** as untimely.

In accordance with Rule 11 of the *Rules Governing Section 2254 Cases*, the undersigned **FURTHER RECOMMENDS** that a certificate of appealability be **DENIED**. This court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted). Based on the foregoing discussion, the undersigned concludes Mr. Lynch has failed to make the requisite showing.

### IV. Notice of Right to Object

Any party may file specific written objections to this report and recommendation. Any objections must be filed with the Clerk of Court within **14 days.** The parties must identify every objectionable finding of fact or recommendation and state the specific basis for every objection. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

A party who fails to object to factual or legal conclusions in the Magistrate Judge's report and recommendation waives the right to challenge on appeal those same conclusions adopted in the District Judge's order. Without a proper objection, however, the court on appeal may review

14

the unobjected-to factual and legal conclusions for plain error if necessary in the interests of justice. 11th Cir. R. 3-1.

After receiving any objections, a District Judge will conduct a *de novo* review of the relevant portions of the report and recommendation and may accept, reject, or modify in whole or in part the Magistrate Judge's findings of fact and recommendations.  The District Judge also may refer this action back to the Magistrate Judge with instructions for further proceedings.

A party may not appeal the Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may only appeal from a final judgment entered by a District Judge.

DONE this 22nd day of June, 2026.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE